# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

PAULINE SAMUELS,

                Plaintiff,

-vs-                                        Case No.  2:09-cv-756-FtM-29SPC

COMMISSIONER  of SOCIAL SECURITY,

                Defendant.

_____

## REPORT AND RECOMMENDATION[1]

### TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on the Plaintiff's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on November 17, 2009, in the Middle District of Florida, Fort Myers Division.  The Plaintiff filed her Memorandum of Law in Opposition to the Commissioner's Decision (Doc. #15) on June 11, 2010.  The Commissioner filed the Memorandum in Support of the Commissioner's Decision (Doc. #16) on August 10, 2010.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the  pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court  pursuant to 42 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on December 11, 2006, alleging an initial onset disability date of February 1, 1997. (Tr. 101-05). The claim was denied initially on February 8, 2007, (Tr. 50-53, 55-57), and upon reconsideration on April 20, 2007. (Tr. 11). The Plaintiff subsequently on May 11, 2007, filed a Request for Hearing before an ALJ. (Tr. 11). ALJ Mary Brennan held a video hearing from Fort Lauderdale, Florida on April 17, 2009. The claimant appeared in person in Fort Myers, Florida. (Tr. 17-40). ALJ Brennan issued an unfavorable decision on May 7, 2009, finding that from the onset date of February 1, 1997 through her date last insured of December 31, 1997, Samuels did not have any severe impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. (Tr. 8-16). The Plaintiff filed a Request for Review of the Hearing Decision and a Brief to the Appeals Council, which was denied on September 29, 2009. (Tr. 1). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint for review with this Court under 42 U.S.C. § 405(g) on November 17, 2009.

### *Plaintiff's History*

The Plaintiff was thirty-eight (38) years old at her date last insured and fifty (50) years of age at the time of the Commissioner's decision on May 7, 2009. (Tr. 27).[2] The Plaintiff attended school in Jamaica until the 11th grade. (Tr. 27). She did not obtain her GED. (Tr. 27). She lives

---

[2]Plaintiff's brief states that Samuels was 47-years of age on the date of the ALJ's decision, but Samuels testified   at the hearing that she was 50-years old.

in Charlotte, Florida with her 15-year old daughter and 20-year old son.  (Tr. 27).  She previously

worked as a certified nursing assistant. (Tr. 27, 113-14, 120-21).  The Plaintiff alleges a disability

since February 1, 1997, because of coronary problems, racing heart rate, nausea, uncontrolled high

blood pressure, no thyroid, severe back problems, and extreme fatigue. (Tr. 28, 113).  She testified

that she cannot work because she suffers from syncope and nausea on a daily basis that causes her

to stay in bed 10 hours a day.  (Tr. 33-34, 36).

A vocational expert was present at the hearing, but was not questioned by the ALJ or

Plaintiff's counsel.

### Relevant Medical Evidence

At the hearing, Samuels testified that she first received medical attention in 1993. (Tr. 28)

She indicated that she was treated by a Dr. Garrett in the hospital, and for 14 years at his practice.

(Tr. 29).  She testified that he was the main doctor that she saw throughout the years, including

1997. (Tr. 30).  Samuels said that she was told that all of his old records were lost to Hurricane

Charley in August 2004.  Dr. Garrett told Samuels to find another doctor and that he could not treat

her anymore.  (Tr. 30-31).

Prior to Samuels' onset date of February 1, 1997, the records reveal limited treatment for

syncope. On March 4, 1994, Samuels presented to the hospital after a syncopal[3] episode in the

shower, was found to be unresponsive, and was brought by EMS to the emergency room.  (Tr. 385-

401). She described previous episodes of chest heaviness and palpitations with near syncope during

---

[3]Syncopal is a temporary suspension of consciousness due to generalized cerebral ischemia.
*Dorland's Illustrated Medical Dictionary* 1845 (31st ed. 2007).

her last pregnancy.  Her arterial blood gasses revealed hypoxia.[4]  She was diagnosed with syncope, probably related to vasodepressor affect rule out orthostatic hypotension, cardiac arrhythmia, rule out seizure disorder.  During this time, she was also treated for depression and vertigo. (Tr. 183-85).  In September 1994, she was diagnosed with major depression, rule out schizoid and her prognosis was good.  *Id.*

While hospitalized in January 1997 for recurrent menometrorrhagia, Samuels underwent a vaginal hysterectomy.  (Tr. 187-89).  Dr. Mark Droffner was the attending physician.  Her postoperative course was complicated by positional vertigo[5] and she suffered from some significant dizziness.  She had to stay in the hospital an extra 24 hours.

On January 6, 1998, Samuels was involved in a car accident during which she lost control of her car and struck a tree. (Tr. 545-546).  She was currently unable to ambulate without assistance.  Examination revealed tenderness of her neck and sterna area. She was diagnosed with neck strain, head injury, and contusion to the chest. She was involved in another car accident in February 1999, and sustained an acute cervical and right shoulder strain.  (Tr. 494).

As Samuels' insured status expired in December 1997, she continued to suffer from syncopal episodes in addition to other conditions. In September 1999, she was treated for her hypothyroidism.  (Tr. 330-35).  She reported being diagnosed with hypothyroidism at the same time she had a stroke.  A CT scan of the neck showed displacement of the trachea quite severely related to the thyroid goiter.  Pulmonary function testing showed severe obstruction and concomitant restrictive defect.

---

[4]Hypoxia is insufficient oxygen reaching the blood. *Dorland's* at 920.

[5]Vertigo is an illusory sense that either the environment or one's own body is revolving. *Dorland's* at 2080.

She continued to suffer from syncopal spells and headaches in 2003. (Tr. 191-219, 275-77, 283-88). On March 23, 2003, Samuels was treated for acute syncope and hypotension at the emergency room. (Tr. 444-52). She was eventually admitted shortly thereafter due to passing out. (Tr. 436-41, 579). She stayed in a wheelchair with her feet up and wore a neck brace. In 2007, Samuels was again treated for chronic recurrent syncope. (Tr. 587-626).

She again came under the care of Dr. Droffner on July 31, 2008. (Tr. 677). The notes indicated that Samuels was treated by Dr. Droffner several times in the early nineties. Subsequently she developed multiple episodes of syncope and underwent several studies that revealed what essentially sounded like POTS syndrome with recurrent orthostatic hypotension complicated by PACs and bradycardia. She was diagnosed with POTS syndrome with orthostasis resulting in multiple episodes of neurocardiogenic syncope, depression, substernal goiter status post thyroidectomy, and prediabetes. *Id.*

Samuels continued under Dr. Droffner's care through the date of the hearing. After additional treatment in 2008 and 2009, on March 12, 2009, Dr. Droffner completed a retrospective Medical Source Statement regarding Samuels. (Tr. 671-72). He opined she could not lift or carry more than ten pounds due to the high risk of syncope attempting to lift anything where she would strain. She could only stand and/or walk for less than thirty minutes in an eight-hour day due to orthostatic blood pressure leading to syncope. She could not climb, balance, stoop, kneel, crouch, or crawl. She would constantly have impairment with concentration, ability to follow, carry out, to remember and understand simple instructions, to use judgment, to respond to supervision, coworkers, and usual work situations and the ability to deal with changes in a routine work setting.

Dr. Doffner checked a box on the Medical Source Statement indicating that these limitations have existed since February 1, 1997. (Tr. 672).

<u>*Administrative Law Judge's Decision*</u>

Upon consideration of the evidence, the ALJ found the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 1997. (Tr. 13). The ALJ found the Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 1997, through her date last insured of December 31, 1997 (20 CFR § 404.1520(b) and 404. 1571 *et seq*.). (Tr. 13). The Plaintiff was found to not have any severe impairments through the date last insured. 20 CFR § 404.1520(c). (Tr. 13). Although the ALJ found that the Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible, and there is no medical evidence of record to establish severe impairments regarding the period at issue. (Tr. 15). The Plaintiff was found to not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the Plaintiff did not have a severe impairment or combination of impairments. 20 C.F.R. § 404.1521 *et seq*. (Tr. 13). After careful consideration of the entire record, the ALJ found the Plaintiff had not provided any medical evidence regarding the period at issue, February 1, 1997, through the date last insured, December 31, 1997, to support her allegations of disability. (Tr. 15). Thus, the ALJ concluded that Samuels was not disabled at Step Two of the sequential analysis.

The ALJ found that although the Plaintiff testified and described her daily activities to be fairly limited, two factors weighed against considering these allegations to be strong evidence in

favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively

verified with any reasonable degree of certainty.  Secondly, even if the Plaintiff's daily activities are

truly as limited as alleged, it is difficult to attribute that degree of limitation to the Plaintiff's medical

condition, as opposed to other reasons, in view of the relatively weak medical evidence and other

factors discussed in the ALJ's decision during the period at issue, February 1, 1997, through

December 31, 1997.

## THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standards, and whether the findings are supported by substantial evidence.  Hibbard v.

Commissioner, WL 4365647 *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S.

389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th

Cir. 1988)).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry

described in the regulations.[6]  20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings

---

[6]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*   Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla - *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla.

2005) (citing <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994)); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

The Plaintiff alleges that the ALJ committed two errors for which this case should be remanded.  Specifically, Plaintiff alleges: (1) The ALJ failed to articulate good cause for not crediting the treating opinion of Dr. Mark Droffner; and (2) The ALJ erred in finding that Samuels did not suffer from a minimally severe physical impairment at Step Two of the sequential analysis. The Court will proceed by examining these issues in turn.

### *1.  The ALJ failed to follow the treating physician rule*

The Plaintiff argues the ALJ erred by affording little weight to the Plaintiff's treating physician, Dr. Mark Droffner.  Plaintiff argues that Dr. Droffner's opinion was supported by the medical history that is in the record.  And despite the missing records from Dr. Garrett, Dr. Doffner's records are evidence that Samuels has suffered from dizziness for many years.  The ALJ rejected Dr. Droffner's opinion because "there are no records to establish a severe impairment prior to the claimant's DLI" and "his records only relate to 2008." (Tr. 15).  The Defendant maintains

the ALJ afforded the appropriate weight to the treating physician and sufficiently articulated her reasoning for doing so.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580,   (11th Cir. 1991) (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion

is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527

(d)(2); <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount

the treating physician's opinion he must clearly articulate the reasons for giving less weight to the

opinion, and failure to do so is reversible error. <u>Morrison</u>, 278 F. Supp. at 1334.

The ALJ is required to review all of the medical findings and other evidence that supports

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

making the ultimate determination about whether a claimant meets the statutory definition of

disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the

status of a physician as treating or non-treating in weighing an opinion on whether the claimant

meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and

404.1546), or the application of vocational factors because that ultimate determination is the

providence of the Commissioner. 20 C.F.R. § 404.1527(e).

The Plaintiff argues the ALJ did not properly weigh the opinion evidence and did not state

her reasoning for doing so.  In the instant case, the ALJ states as follows:

> A thorough review of these records show only one hospitalization or medical
> treatment for syncope prior to the claimant's DLI, dated March 4, 1994, then
> no other treatment for syncope or chest pain, until 2003 (see Peace River
> Records, page 123, and St. Joseph records, page 21).  The only record of
> medical treatment in 1997 is treatment for hysterectomy and related
> problems.  In January 1998, the claimant did have a motor vehicle accident
> in which she reported losing consciousness, but she was not treated for
> syncope after the event.  Moreover, a CT of the brain on that visit was
> normal.  The medical records reflect that claimant was treated for a shoulder
> strain, not syncope.  In addition, Dr. Droffner's records only cover the year
> 2008.

Thus, the only medical evidence from 1997 is for a hysterectomy and related problems.  (Tr. 173-82,

370-72).  Upon consideration of the record, the ALJ clearly summarized her decision and addressed

the retrospective opinion evidence of Dr. Droffner.  (Tr. 16).  The ALJ stated she attached little

weight to Dr. Droffner's opinions because there are no records to establish a severe impairment prior

to the claimant's date last insured and that would support Dr. Doffner's retrospective Medical

Source Statement.  (Tr. 16, 671-73).

    In disregarding the opinions of the treating physician in this case, the ALJ clearly and

properly articulated her reasons for giving them less weight. Phillips, 357 F.3d at 1241.  As such,

good cause existed in the record to give less weight to the treating physician's opinion because there

were no medical records from the alleged onset date to the date last insured that would support the

retrospective Medical Source Statement.  Where a treating physician has merely made conclusory

statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582

(11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ may properly

discount a physician's opinion if it is not supported by or is contrary to medical evidence in the

record. Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003).

    In this instance, the ALJ supported her finding that the Plaintiff's physical impairments were

not severe because substantial evidence in the record did not support such a finding.  The evidence

in the record supports the ALJ's finding that there was no evidence from 1997 to support Dr.

Droffner's opinion as it related to Plaintiff's condition in 1997.  (Tr. 671-72).  With no evidence to

support the severity of symptoms and limitations as alleged by Plaintiff and opined by Dr. Droffner

in 2009, the ALJ properly found Plaintniff did not have a severe impairment prior to her date last

insured.  (Tr. 15-16).  Therefore, these findings will not be disturbed.

Plaintiff relies on <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1211 (11th Cir. 1983), for the proposition that a retrospective opinion cannot be rejected merely because it is retrospective.  Yet, the ALJ found that the entire record evidence before her from 1997 did not support Dr. Droffner's opinion that she was disabled due to syncope.  While the record does contain a January 29, 1997 hospital admission for hysterectomy, which indicates that Samuels postoperative course was complicated by positional vertigo and dizziness, this does not establish a "pattern of syncope" as alleged by Plaintiff.  (Pl. Br. at 8).  Thus, the ALJ did not reject the opinion because it was retrospective.  Rather, it was not supported by the relevant medical evidence from 1997.  (Tr. 15).  The records from 1997 do not reflect a continuing diagnosis of syncope.

Finally, Plaintiff alleges that the ALJ did not have the entirety of Plaintiff's medical records on which to base her decision, due to the fact that some records were destroyed in Hurricane Charley.  Plaintiff also alleges that the Commissioner failed to locate Plaintiff's medical records that the Commissioner had in its possession from Plaintiff's prior application in 2003 that was denied at the initial determination stage (Tr. 109), in which "it is likely that Dr. Garrett's older records would have been included in the file."  (Pl. Br. at 12).

The ALJ noted in her findings that the claimant had not provided medical evidence showing that she has an impairment, as she is required to do.  (20 C.F.R. §§ 404.1514 and 416.914).  The ALJ stated that:

> The Administration has attempted to update the medical records at the initial, reconsideration, and hearing level.  The undersigned notes that many exhibits were incorrectly submitted under Section "E," including the Bon-Secours-St. Joseph, Peace River records, and Dr. Droffner's records . . . If the claimant does not submit the medical evidence needed, the Administrative Law Judge must make a decision based on the information contained in the record (20 C.F.R. §§ 404.1516 and 416.916).  The undersigned finds that the claimant's statements are not entirely credible, since they cannot be substantiated by any evidence in the record.

(Tr. 15).  At no point did Plaintiff's counsel inform the Commissioner that additional medical records existed from 1997 that would support the claim of disability and counsel did not inform the ALJ that such records were in the Commissioner's possession.  The ALJ did request that counsel provide any missing records to her as counsel indicated at the hearing that she could not locate records from Dr. Garrett.  Notably, counsel did not indicate at this time that Dr. Garrett's records might be in Samuels' 2003 application file.  (Tr. 26, 30, 32, 39-40).  "[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  In this case, it is purely speculative that any additional medical records are in the possession of the Commissioner and the record does not show that the ALJ failed to request medical records or develop the record.

### 2. The ALJ erred in finding that Samuels did not suffer from a minimally severe physical impairment at Step Two of the sequential analysis

Next, Plaintiff alleges that the ALJ erred in finding that Samuels did not suffer from a minimally severe physical impairment at Step Two.  She argues that the ALJ did not engage in the proper analysis because the ALJ improperly relied upon the lack of medical records, even though the records were destroyed by Hurricane Charley and were likely in the Commissioner's possession.  Claimant alleges that since 1997, the records reflect ongoing treatment for syncope, in addition to the retrospective opinion of Dr. Droffner that she did suffer from disabling limitations in 1997.  Plaintiff asserts that there was at least enough evidence to support a finding that her syncope was a severe impairment at Step Two of the sequential evaluation.  (Pl. Br. at 6).

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the

claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)).  At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005).  An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)).  Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. Jones v Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991).  An ALJ properly considers the claimant's impairments in combination if he states that the claimant does not have an impairment, or combination of impairments of sufficient severity to prevent him for engaging in any substantial gainful activity. Gibbs, 156 Fed. Appx. at 246 (citing Wheeler v Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)).

In evaluating whether Plaintiff had any severe impairments, the ALJ reviewed the available medical evidence along with Plaintiff's subjective complaints. (Tr. 14-16).  The ALJ also reviewed Plaintiff's subjective complaints and found that the severity of her complaints of limited activities was not supported by the objective medical evidence.  (Tr. 15).  As discussed above, the medical

evidence from 1997 shows that Plaintiff had one syncope incident and a hysterectomy.  (Tr. 173-82, 370-72, 385-86, 399).

With regard to the argument that the ALJ lacked medical records and therefore failed to engage in a proper analysis at Step Two, the record here did include some medical evidence from 1994 through 1997 and the ALJ reviewed that medical evidence and found that it did not support a finding of severe impairment.  (Tr. 13).  Here, the ALJ requested records that Plaintiff had not provided at the hearing.  Plaintiff's counsel represented at the hearing that she had reviewed the file.  (Tr. 24).  As discussed above, Plaintiff has the burden to bring forth evidence to prove her alleged disability.  20 C.F.R. §§ 404.1512(c), 404.1514, 404.1516.  Thus, substantial evidence supports the ALJ's decision that Plaintiff was not disabled, and had no severe impairments prior to her date last insured of December 31, 1997, and the Commissioner's decision should be affirmed.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this   28th   day of December, 2010.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

-16-